## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

## ALBUQUERQUE DIVISION

### ORIGINAL COMPLAINT

1. JURISDICTION: **A** COPY OF 90-day letter U.S. EQUAL OPPORTUNITY COMMMISSION IS ATTACHED IN FULL. THE BALACE OF THE FIRST AMENDED COMPLAINT EXPLAINS THAT DISTRICT JUDGE LUCIUS BUNTON FOUND IN FAVOR OF **BERNARDO M. PEREZ** AGAINST THE FBI, *et al.* *Perez v. F.B.I., F.Supp (W.D.Tex 1988)* BERNARDO M. PEREZ NEVER RECEIVED HIS BONUS FOR DECADES.

2. Parties are Merrick B. Garland, the Attorney General of the Department of Justice, or his successor in interest. Bernardo M. Perez is a retired Special Agent who was short-changed in his pension. All matters relating to Venue occurred in Albuquerque, New Mexico.

3. The cause of action is based in on Lilly Ledbetter and its progeny.

4. Expenses are extensive, and forensic accountants will have to crunch the numbers. No opinion is given here as to the amount of damages.

Jose Angel Silva DATE: 8/21/2023
New Mexico Bar Association #3380
Pacer Account:#56585608
907 East Baltimore Dr.
EL Paso, TX 79902
(915) 613-9090
joenueve@gmail.com

### CERTIFICATE OF SERVICE

TO: ARLENE A. GAYLORD, ASSISTANT DIRECTOR,
DEPARTMENT OF JUSTICE (FBI)
VIA FED SEP

JOSE ANGEL SILVA    08/21/2023

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Office of Federal Operations**
P.O. Box 77960
Washington, DC 20013

Bernardo M. Perez, a/k/a
Octavio C.,[1]
Complainant,

v.

Merrick B. Garland,
Attorney General,
Department of Justice
(Federal Bureau of Investigation),
Agency.

Appeal No. 2022002892

Hearing No. 570-2022-00077X

Agency No. FBI-2021-00233

## DECISION

On April 29, 2022, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a). from the Agency's March 30, 2022 final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant was a retired FBI Agent, Senior Executive Service (SES), at the Agency's Albuquerque Division in Albuquerque, New Mexico.

Complainant retired from employment with the Agency in 1995. On September 8, 2021. Complainant sought EEO counseling. Report of Counseling (ROC) at 2-3. According to Complainant. during his employment, the Agency subjected him to harassment and discrimination based on his national origin and religion, and repeatedly retaliated against him as

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

a result of his participation as the named class representative in a lawsuit filed in federal court. Complainant also alleged that the Agency failed to promote him to the Senior Executive Service (SES) 5 paygrade as ordered by a federal judge in 1988 and, as a result, his subsequent retirement payments have been lower than he believed was proper. ROC at 3-4.

On September 22, the Agency issued to Complainant a Notice of Right to File a Formal Complaint. ROC at 4.

On September 30, 2021, Complainant filed a formal complaint alleging that the Agency subjected him to discrimination on the bases of race (Native American), national origin (Mexican American), sex (male), religion (Catholic), color, age (82), and reprisal for prior protected EEO activity when, from 1995 to the present, he has received monthly retirement checks at the Senior Executive Service (""SES") 4 pay grade instead of the SES 5 pay grade. While Complainant checked a box on his complaint form indicating he was also filing a class claim, the narrative to his complaint only related to his individual claims concerning his retirement pension.

However, because Complainant had checked the class claim box on his complaint form, on November 2, 2021, the Agency forwarded the complaint to an EEOC Administrative Judge (AJ) to determine if the complaint should be certified as a class complaint. On January 20, 2022, the AJ issued a request for information to the parties. The parties timely filed their responses.

In his response, Complainant alleged that the Agency reduced his salary from the SES-4 to the SES-3 level during his employment due to the 1988-89 federal court decision in a class action complaint in which he was the named class representative. See Complainant's Response at 1-2. Complainant formed his belief regarding retaliation at the time of the salary reduction but felt he could not file a complaint with the Agency's EEO office due to his fears of further retaliation. Complainant's Response al 2-3. Complainant alleged that all retirement payments he received from 1995 to the present have been improper as a result of the retaliation during his employment. See Complainant's Response at 3 and 5.

In his response to the AJ, Complainant also very generally asserted that FBI employment and promotion numbers regarding FBI Agents showed that the FBI has continued to fail to hire or promote Latino FBI Agents. Complainant contended that as of January 31, 2022, there were 13,455 FBI Agents and only 6.8% were Hispanics, while the current Latino population in the U.S.A. was 18.5%. Beyond these generalities, however, Complainant provided no detail as to the particular employment practices he was challenging on a class-wide basis or the number of individuals by each of the employment practices that he alleged to be discriminatory. Complainant's Answers to AJ's Letter Dated January 20, 2022 (Complainant's Response) at 3-4.

On February 8, 2022, pursuant to 29 C.F.R. § 1614.204(d)(2) and§ 1614.107(a)(2), the AJ issued a decision and order dismissing Complainant's complaint, either individually or as a potential class claim, as untimely raised. The AJ found Complainant first contacted an EEO counselor more than 25 years after retiring from the Agency.

Complainant argued that his complaint was timely because every improperly low retirement payment represented a new act of discrimination or retaliation. See AJ's Decision at 2. The AJ detem1ined that Complainant's argument was not supported by law.

The Agency subsequently issued a final order adopting the AJ's decision and order. This appeal followed.

## ANALYSIS AND FINDINGS

The Commission's regulations at 29 C.F.R. §1614.105(a)(I) provides that an aggrieved person must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or. in the case of a personnel action, within 45 days of the effective date of the action. The Commission's regulation at 29 C.F.R. §1614.107(a)(2) states that a complaint should be dismissed that fails to comply with the applicable time limits contained in §I614.105, §1614.106 and §1614.204(c), unless the time limits arc extended in accordance with §1614.604(c). Pursuant to 29 C.F.R. § 1614.204, an administrative judge may dismiss a class complaint for any of the reasons listed in 29 C.F.R. § 1614.107, including untimely EEO counselor contact.

Here, the record reflects that Complainant retired from his employment with the Agency in December I995. Complainant, however. did not initiate EEO contact in the instant complaint until September 8, 2021. This was almost 26 years after December 1995. when Complainant received the first of the retirement payments that he alleged were lower than he believed was proper. The record is devoid of any evidence that Complainant was unaware of the statutory requirements that aggrieved employees must contact an EEO counselor within 45 days of alleged discrimination.

Complainant argues that his complaint was timely because every improperly low retirement payment represents a new act of discrimination or retaliation. However, the AJ correctly determined that Complainant's argument was not supported by law. Citing to Commission precedent, the AJ observed that the Lilly Ledbetter Fair Pay Act "preserves the former case law with respect to payments of pension benefits where the amount of the benefit is determined by a formula that was applied ... when the employee retired:· See Brakcall v. Env't Prot. Agency, EEOC App. No. 0 I20093805 (Nov. 30, 20I0). Therefore, asserted the AJ, unlike paychecks, the receipt of a retirement payment did not restart the 45-day clock for making initial EEO contact. See Id. ("[P]ension benefits are considered paid upon entering retirement and not upon the issuance of each annuity check"); see also Lashawn C. v. Dep't of Veterans Affairs, EEOC App. No. 0120170724 (Mar. 21, 2019) ("Although Complainant received retirement benefits after May 2013, Complainant's retirement benefit is considered paid in May 2013 when she retired, not when she received each retirement check. Accordingly, Complainant's February 27, 2014, counselor contact was untimely...) Lauralee C. v. Dep't of the Army, EEOC App. No. 0120152265 (Oct. 23. 2015) ("[W)e do not find that the Lilly Ledbetter Fair Pay Act is applicable ... to retirement payments.'").

4                                                                          2022002892

The AJ also correctly found that Complainant's claims regarding the reduction of pay during his employment were untimely. Complainant conceded he believed at the time that the reduction was retaliatory but did not contact an EEO counselor out of fear of further retaliation. Citing to Commission precedent, the AJ noted that Complainant's concerns about further retaliation were not grounds to toll the 45-day deadline for more than two decades. See Levi P. v. Dep't of Homeland Sec., EEOC App. No. 2020002002 (Aug. 27, 2020) ("[T]he Commission has held that fear of reprisal alone is an insufficient justification for extending the time limitation for contacting an EEO Counselor.").

In sum, we AFFIRM the AJ's dismissal of Complainant's complaint for untimely EEO counselor contact.[2]

## CONCLUSION

Based on a thorough review of the record, we AFFIRM the Agency's final order adopting the AJ"s decision and order dismissing Complainant's complaint as untimely raised.

## STATEMET OF RIGHTS- ON APPEAL
## RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices. or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, that statement or brief must be filed together with the request for reconsideration. A party shall have twenty (20) calendar days from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-I I0), at Chap. 9 § VII.B (Aug. 5. 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

---

[2] We note that the Agency argued to the AJ, in its motion to dismiss the class complaint, that the complaint also failed to meet the criteria required for class certification. As the complaint is dismissed as untimely raised. we do not need to address these arguments.

5

2022002892

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington. DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 16l4.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted together with the request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head. identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. ''Agency'' or "department" means the national organization, and not the local office, facility, or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (20815)

If you want to file a civil action but cannot pay the fees. costs, or security lo do so. you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

6                                                    2022002892

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

May 2, 2023
Date

7                                                    2022002892

## CERTIFICATE OF MALLING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was made available to the parties. I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Bernardo M. Perez
1820 Pebble Creek Trail N.W.
Albuquerque, NM 87120
Via U.S. Mail

Jose A. Silva
907 E. Baltimore Dr.
El Paso, TX 79902
Via U.S. Mail

Arlene A. Gaylord, Assistant Director
Department of Justice (FBI)
Via FedSEP

May 2, 2023
Date

Compliance and Control Division

G-11

303
844 3157

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

APR 6

CHARLES
ET B1

BERNARDO M. PEREZ,
on behalf of himself and
all others similarly situated,
    Plaintiffs,

V.

FEDERAL BUREAU OF INVESTIGATION,
DEPARTMENT OF JUSTICE,
EDWIN MEESE, III, Attorney General
of the United States, WILLIAM H.
WEBSTER, Director, FEDERAL BUREAU
OF INVESTIGATION,
    Defendants.

NO. EP87CA10
JUDGE: BUNTON

### FIRST AMENDED
### CLASS COMPLAINT FOR RELIEF
### FROM DISCRIMINATION BASED ON
### RACE, NATIONAL ORIGIN AND RELIGION

### INTRODUCTION: Nature of the Action

1.    This is a class action by Plaintiff, a Hispanic, to redress discrimination suffered by him as an employee of the Federal Bureau of Investigation (FBI). The complaint is filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., and the Federal Rules of Civil Procedure, Rule 23. The action is brought by Plaintiff on his own behalf, and on behalf of similarly situated Hispanic FBI special agents, against the FBI for pursuing discriminatory employment practices based on race, national origin and religion.

2.    This First Amended Complaint incorporates all allegations pled in the Original Complaint filed in this cause as if fully set forth herein.

### JURISDICTION — EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.    This suit is brought and jurisdiction lies



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO TEXAS
MESEA TEXAS
VIZ. ARIZONA

pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., and 28 U.S.C. 1331.

4.    All conditions precedent to jurisdiction under Title VII, 42 U.S.C. Section 2000e-5(f) (3) have been met. Specifically, a charge of employment discrimination was filed with the Equal Employment Opportunity Commission within Thirty (30) days of the commission of unlawful employment practice.    A Final Decision was received from the Equal Employment Opportunity Commission on December 22, 1986; this complaint has been filed within thirty (30) days of receipt of the notification of right to sue.

5.    The Plaintiff has exhausted all administrative remedies both as to his individual and class complaints.

## VENUE

6.    Venue is proper within this district under 42 U.S.C. 2000e-5 (f) (3).    The ongoing discriminatory pattern and practice of discrimination and retaliation have been committed in this judicial district.

## PARTIES

7.    BERNARDO M. PEREZ is a resident of this judicial district.    MR. BERNARDO M. PEREZ is a citizen of the United States.

8.    Defendant EDWIN MEESE, III, the Attorney General of the United States, is sued in his official capacity and is the head of an agency within the meaning of 42 U.S.C. 2000e-16 (c).    His address for service of process is at Constitution Ave, and 10th Street, N.W., Washington, D.C.



SILVA. SILVA.
&
HERRERA
ATTORNEYS

EL PASO. TEXAS
ODESSA. TEXAS
PHOENIX. ARIZONA

20530. WILLIAM H. WEBSTER, Director of the F.B.I., may be served with process at F.B.I. Headquarters, 10th and Pennsylvania Avenue, Washington, D.C., 20535. Also, to properly effect completion of service to all parties in this matter, a copy is being hand-delivered to the U.S. Attorney, Ms. HELEN EVERSBERG, Hemisphere Plaza, 655 E. Durando Blvd., San Antonio, Texas 78206.

FACTUAL ALLEGATIONS

9. The Plaintiff is the highest ranking Hispanic agent in the history of the FBI, being employed by the Defendant since 1960. The Plaintiff has held numerous positions within the Bureau, including that of Special Agent in charge in San Juan, Puerto Rico for two and a half years, and Senior Administrative Assistant Special Agent in charge in Los Angeles.

10. The Plaintiff is currently Assistant Special Agent in charge in El Paso, GS16,

COUNT I.

INDIVIDUAL ACTION

11. The Plaintiff incorporates all the foregoing as if fully set forth herein.

12. Plaintiff, filed complaints of discrimination and reprisal against the FBI under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e. The Plaintiff alleged that treatment which he received while employed at the FBI's Los Angeles Division was discriminatory on the basis of his religion (Roman Catholic) and national origin (Mexican American) and also in retaliation for having



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

engaged in the Equal Employment Opportunity (EEO) process.

13. The Plaintiff contacted an EEO Counselor on October 6, 1983 alleging discrimination on the basis of national origin. An unsuccessful attempt to informally resolve the complaint was followed by the filing of a formal complaint of October 26, 1984. The Bureau notified the Plaintiff of proposed finding of no discrimination on March 26, 1984. The Plaintiff then requested a hearing before an Equal Employment Opportunity Commission (EEOC) Attorney - Examiner on April 17, 1984.

14. The Plaintiff wrote to the Director of the FBI on November 23, 1983, alleging reprisal and subsequently contacted an EEO Counselor on January 15, 1984. An informal resolution could not be reached and a formal complaint of reprisal was filed on January 20, 1984. The FBI subsequently issued a proposed disposition and the Plaintiff again requested a hearing.

15. The EEOC Examiner consolidated the two complaints for the hearing (November of 1984 and January of 1985). The Hearing-Examiner allowed the complaint to be amplified to include discrimination based on religion, and heard extensive testimony regarding the Mormon protection system. The EEOC Examiner issued a recommended decision on August 22, 1984. The record was received by the Complaint Adjudication Office for final decision on September 11, 1985. A Final Decision was rendered by the Complaint Adjudication Officer in a decision received by the Plaintiff on December 22, 1986. This Decision is attached .



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO. TEXAS
ODESSA TEXAS
PHOENIX. ARIZONA

as Exhibit "1." This complaint is filed within the time limit prescribed by law.

## Count II

### CLASS ALLEGATIONS

16. The Plaintiff incorporates all the foregoing as if fully set forth herein.

17. On October 17, 1985, the Plaintiff filed with the United States Department of Justice an formal administrative class complaint of National Origin Discrimination. More than 180 days have elapsed since the filing of that complaint and there has been no final agency action on it. All prerequisites to suit under Title VII have been satisfied.

Plaintiff brings this action on his own behalf and pursuant to Rule 23(a) and 23(b) (2) of the Federal Rules of Civil Procedure, as a class action on behalf of all those similarly situated. The members of the class are so numerous that joinder of all members is impracticable. There are approximately twenty-eight Hispanic FBI agents that seek to join this class action.

There are questions of law and fact common to the class and/or subclasses.

Defendants have acted and refuse to act on grounds generally applicable to the class and subclasses, thereby making appropriate final injunctive and declaratory relief with respect to all members of the class and subclasses.

Plaintiff is an FBI special agent and his claims are typical of the claims of the class and subclasses; and



SILVA. SILVA.
&
HERRERA
ATTORNEYS

EL PASO TEXAS
ODESSA. TEXAS
PHOENIX. ARIZONA

Plaintiff will fairly and adequately protect the interests of the class and subclasses.

18. The class sought to be represented by Plaintiff consists of all past, present and future Hispanic agents working for the FBI. These class claimants have been discriminated against in assignments, career advancements, reprisal, and disparate treatment because of race, national origin and religion. The class consists of mainly non-management individuals, and some agents who hold supervisory positions. At present, these are only approximately fourteen GS-14 who are Hispanic, and two GS-16's including the Plaintiff herein. The subclasses are as follows: (1) Current managerial or supervisory special agents (GS-14 to GS-18); (2) mon-management special agents (GS-10 to GS-14); (3); persons who have attempted to enter the FBI as GS-10 agents; and (4) special agents who have been fired or quit the agency as a result of discrimination.

<u>NUMEROSITY</u>

19. The Plaintiff has been approached by many special agents with similar complaints about discrimination in assignments, career advancement/development, desperate treatment, and reprisal. There are at the present time twenty-eight agents who have responded in writing and seek joinder in the class action. Joinder is impracticable because of geographic dispersal. These agents are prepared to testify at the hearing for class certification. Of the 9.094 special agents in the FBI, three hundred and sixty-si (366) are Hispanics; the Plaintiff believes that all are potential class claimants. The class is so numerous that



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

joinder is impracticable.

## TYPICALITY

20.   The Plaintiff is typical of the complained of group.   The claims of Plaintiff are typical of the class; for example, he was assigned to those areas with large Spanish speaking populations such as San Juan, Puerto Rico, Miami, Florida, Tampa, Phoenix, San Antonio, Texas, and was required to work under an excessive case [work] load.   The Plaintiff was forced to field both Spanish speaking and non-Spanish speaking cases.   The Plaintiff was able through persistence, to achieve a supervisory position within eight years by accepting night duty in the Miami area while simultaneously working undercover.   Non-Hispanics were not required to engage in such activities to become supervisors. In El Paso, Los Angeles, San Diego, Phoenix, Albuquerque, Denver, Chicago, Dallas, San Antonio, Houston, New Orleans, Tampa, Miami, New York City, or San Juan - all divisions with large Spanish speaking populations - there is no special agent in charge who can converse in the Spanish language.

## COMMONALITY

21.   These are questions of law and fact common to the class.   For example, the Plaintiff has been transferred fourteen times in his twenty four year career.   This is a disproportionate transfer rate to that of non-Hispanic agents.   All class members have this problem in common. Hispanic special agents are transferred more often than the special agent population as a whole.



SILVA, SILVA.
&
HERRERA
ATTORNEYS

EL PASO. TEXAS
ODESSA. TEXAS
PHOENIX, ARIZONA

22. Throughout the Plaintiff's career in the FBI, he was treated as a second class agent. This is common to all Hispanic agents who are "tracked" throughout their careers, never being allowed to advance into supervisory positions. There are common questions of law whether this constitutes invidious discrimination based on race, national origin, and religion.

ceiling Title III's etc & so no
where els

## ADEQUACY OF REPRESENTATION

23. Plaintiff seeks to represent the class because all of the foregoing allegations are endemic and class-wide in the FBI. The Plaintiff is an adequate representative of the Hispanics since the individual class members would be at various stages of their career and the Plaintiff is now near the position of fulfilling the retirement requirements, having survived continuous first-hand the discriminatory effects complained herein.

24. The Plaintiff was the only Hispanic in the FBI to have ever been advanced to the GS-16 level. Recently the only other Hispanic GM15 was promoted to a GS-16 level. The Plaintiff can adequately represent the complaints of the class members because of his experience, training, knowledge, and because he has suffered all these discriminations in the areas of assignments, transfers, training, promotions, disparate treatment, disciplinary actions, and reprisal.

25. The members of the purported class are now, upon information and belief, suffering treatment similar to that of the Plaintiff. The FBI's practices and policies have



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

resulted in disparate impact or effect against all Hispanics in the Bureau.

26. The known grievances of the potential class members are all similar to the grievances set forth in the foregoing paragraphs.

27. The class of FBI agents who are victims of the pattern and practices of discrimination (and its effect) is so numerous that joinder of all members is impracticable. These are questions of law and fact common to this class, the claims of Plaintiff are typical of the claims of all the members of the class, and Plaintiff will fairly and adequately represent the interests of this class. The FBI has acted on grounds generally applicable to the class, thereby making appropriate both final injunctive and declaratory relief with respect to the class as a whole.

28. The discrimination complained of herein is ongoing and continuing.

## COUNT III

### DISCRIMINATION IN ASSIGNMENTS

29. The Plaintiff incorporates all the foregoing as if fully set forth herein.

30. Duty assignments TO Hispanics in the class are disproportionately made to unfavorable "Hispanic areas." These assignments are longer. They are more dangerous. They are less desirable, and there is little promotional status to this kind of work. Specifically, assignments with Hispanic agents require a disproportionate amount of work in areas such as wire taps and surveillance within the drug world, as well as in the terrorism and other matters. These



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

positions are not supervisory, they do not typically represent opportunities for promotion, and they are special assignments that are in addition to the agents' regular work load.

31. Duty assignments to "Spanish-Speaking" areas result from the FBI's maintenance of a discriminatory program of hiring. This is evident from the number of entry level Hispanic agents, and is also evident from the total number of Hispanic agents (366 out of 9,094). The result is that the Spanish-speaking agents are "frozen into" unfavorable areas.

32. Managerial opportunities are minimal and the result is a segregation into limited geographical areas without special recognition or promotional programs, nor additional compensation for the type and extent of the work.

33. It is alleged that transfers to desirable geographic locations with large Hispanic populations are selectively seniority based. This tends to freeze in the effects of past discriminatory practices. These areas are Albuquerque, El Paso, Phoenix, San Diego, Los Angeles, Sacramento, Dallas, San Antonio and Houston, Newark, Chicago, New York and San Juan. The Plaintiff alleges that Hispanics are treated disparately in utilizing seniority in making such desirable geographic assignments; i.e., individuals who are not fluent Spanish speakers are more likely to be assigned to the more desirable geographic locations with large Hispanic population than are Hispanic FBI agents who are "fluent Spanish speakers."



SILVA. SILVA.
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

34. In addition, the disparity in obtaining desirable geographic assignments is a result of the earlier assignment of "fluent Spanish speaker" to those locations such as San Juan, Miami, New York; i.e., if one must spend a greater number of years in such assignments, then one would not be competitive in the assignment process of the FBI to the desirable geographic location. Advancement in work assignments are also limited because of the linguistic ability which is regarded as a limitation rather than an asset.

COUNT IV

## DISCRIMINATION IN CAREER ADVANCEMENT/DEVELOPMENT

35. The Plaintiff incorporates all the foregoing as if fully set forth herein.

36. Hispanic advancement administratively through the ranks is subject to disparate treatment. Supervisors in the FBI do not fulfill their required duties in assisting Hispanic agents in meeting and fulfilling the criteria for advancement. Specifically, assistance of the type given to non-Hispanics is not available to Hispanics on a proportionate or equal basis. Absolutely no mentorship is available to Hispanics.

37. Hispanic agents are subject to a heavier workload due to the requirement of handling both English and Spanish speaking work assignments. As a result, the work load assignments are disproportionately heavy, causing extraordinary stress, longer working hours, and sometimes leading to the perceived inability to perform at the



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

ultimate level.  No remedial programs are available to Hispanics to help them correct these deficiencies.  Special assignments requiring language expertise, technical and physical surveillance, and under-cover assignments require these Agents to regularly travel to other divisions, away from assigned work and family for extended periods of time.  There is no special compensation for these trying assignments.  Conversely, Hispanic agents are held to the same standards as those who remain behind; i.e., statistical and other measurable accomplishments.  Because of these discriminatory assignments and prolonged absences, a Hispanic agent is precluded from competition for advancement since he is denied required administrative training, tutoring and experience.

## COUNT V

### DISPARATE TREATMENT/REPRISAL

38.  The Plaintiff incorporates all the foregoing as if fully set forth herein.

39.  The Plaintiff has been denied the position of Special Agent in Charge in retaliation for his filing of Equal Employment Opportunity complaints and as a continuation of past discriminatory practices.  The Plaintiff's privacy rights have been violated by the FBI in retaliation for filing EEO complaints by the adjudication and without the Plaintiff's permission.  Persons who have helped the Plaintiff have themselves suffered disparate treatment, punishment, harassment, and unfavorable and unjust administrative action.  The Plaintiff is subject to disparate treatment by FBI headquarters in the supervision



SILVA. SILVA.
&
HERRERA
ATTORNEYS

EL PASO. TEXAS
ODESSA TEXAS
PHOENIX ARIZONA

of the El Paso Division. Hispanics as a class continue to suffer this similar disparate treatment and effect. Redress is sought herein. The Plaintiff wishes to incorporate into this complaint all outstanding EEO complaints on which there has been no agency action for 180 days. These complaints all were filed as a result of reprisal, and one is a class-complaint. These include a complaint filed April 1, 1985 (F85-4009-0); October 23, 1985 (Class complaint F-85-4020-0); March 20, 1986 (F-86-4040-0); July 21, 1986 (Amended October 24, 1986) (F-86-4061-0); October 24, 1986 (Class complaint F-86-4067-0).

40. Hispanic agents are subject to more discipline and are disciplined for actions which do not result in discipline to non-Hispanic agents. This discrimination is class-wide.

41. Hispanics in the FBI are disparately treated in that individuals hired as investigators are utilized on a daily basis as interpreters for which they are not trained or to do translations for which they are not certified. Such translation and interpreter work adds to the already heavy case load work required of the agent resulting in less than optimum work. As such, the agents may be subject to discipline and to unfavorable administrative action due to this cycle of misassignment and disparate treatment within the FBI. Career advancement for the Hispanic is limited a is evidenced by the lack of Hispanics in supervisory positions.

SILVA. SILVA.
&
HERRERA
ATTORNEYS

EL PASO. TEXAS
ODESSA. TEXAS
PHOENIX. ARIZONA

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

1. Enter judgment declaring the FBI's practices constitute unlawful discrimination at the hands of Defendant, or its agents, servants and employees;

2. Order the Plaintiff reinstated to the job rank and position he held prior to his termination, be given the position of Special Agent in Charge in El Paso, together with back pay he would have earned, together with all attendant benefits including but not limited to retirement and insurance benefits;

3. Order the Plaintiff be awarded damages according to proof for his suffering;

4. Order the Plaintiff be awarded Five Million Dollars in punitive damages according to proof against Defendant;

5. Issue a permanent injunction requiring the FBI to refrain from allocating work assignments to Hispanic agents in such a manner as to deny them opportunities for promotion;

6. Order the FBI to develop appropriate goals and timetables for hiring and promoting Hispanic agents to overcome the effects of past discrimination;

7. Order the FBI to grant retroactive promotions, with full back pay and related benefits, to all current and former Hispanic agents who have been victims of such discrimination;

8. Award the Plaintiff the costs and disbursement of this action, including reasonable attorney's fees; and



SILVA, SILVA,
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

9.  Grant and order such further and equitable relief as may be proper in these circumstances.

Respectfully submitted,

SILVA, SILVA & HERRERA, P.C.
BY:  JOSE ANGEL SILVA, JR.
1002 Magoffin St.
El Paso, Texas  79901
TBN:  18351450

I, BERNARDO M. PEREZ, state that I have read the foregoing Class Complaint For Relief From Discrimination Based on Race, National Origin and Religion and believe the allegations contained therein to be true except for those allegations maintained upon information and belief which I believe will be proved true.

BERNARDO M. PEREZ

STATE OF TEXAS
COUNTY OF EL PASO

SWORN and VERIFIED before me by BERNARDO M. PEREZ, on this the 6th day of April, 1987.

Notary Public

My Commission expires:



DINA BARDI
Notary Public State of Texas
Commission Expires 8-24-88

SILVA, SILVA
&
HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of April, 1987, a true and correct copy of the foregoing was mailed to: RICHARD K. WILLARD, Assistant Attorney General, HELEN MILBURN EVERSBERG, United States Attorney, THOMAS J. MCHUGH, Assistant United States Attorney-In-Charge, care of RICHARD GREENBERG and HERBERT E. FORREST, Attorneys, Department of Justice Federal Programs Branch Civil Division - Room 3342 10th & Pennsylvania Avenue, N.W. Washington, D.C., 20530, and to JOSEPH R. DAVIS, Assistant Director Legal Counsel Division, Federal Bureau of Investigation, Room 7427, JEH Building, Washington, D.C. 20530 by placing a true and correct copy of same in the United States Mail with the correct address and appropriate postage.

JOSE ANGEL SILVA, JR.

16

SILVA, SILVA, & HERRERA
ATTORNEYS

EL PASO, TEXAS
ODESSA, TEXAS
PHOENIX, ARIZONA



U.S. Department of Justice

Washington, D.C. 20530

DEC 19 1986

Mr. Bernardo Perez
6361 Via Aventura
El Paso, TX  79912

Dear Mr. Perez:

This is in reference to your complaint of discrimination based on national origin (Mexican-American), religion (Catholic and reprisal which you filed against the Federal Bureau of Investigation.  The record in your case, consisting of an investigative file, exhibits, a hearing transcript, and the EEO Recommended Decision, has been forwarded to the Complaint Adjudication Officer.  Under the Department's equal employment opportunity regulations, the Complaint Adjudication Officer renders the final Department of Justice decision on your complaint.

Enclosed are the final Department of Justice decision, a hearing transcript and EEOC's Recommended Decision on your complaint.

## RIGHTS OF APPEAL

You have certain rights of appeal from this decision. First, you have the right to appeal this decision to the Office of Review and Appeals, Equal Employment Opportunity Commission 2401 E Street, N.W., Washington, D.C. 20506.  Such an appeal be filed within twenty days of the date you receive this notification.  Second, you have the right to file a complaint in the appropriate United States District Court within thirty days of the date you receive this notification.  Third, should you de to appeal this decision to the Equal Employment Opportunity Commission, you still have the right to file a civil action the United States District Court within thirty days of receipt the Equal Employment Opportunity Commission's decision or with 180 days of your appeal to the Commission if no decision has rendered.

If you decide to file a civil action and do not have or unable to obtain the services of an attorney to act on your behalf, you may request the Court, in its discretion, to appo an attorney to represent you.  The Court may also permit you

Exhibit 1

- 2 -

file the civil action without payment of fees, costs, or security. If you want to request appointment of an attorney, your request must be filed with the Court within thirty days from the date you receive this decision.

Sincerely,

Mark L. Gross
Complaint Adjudication Officer

cc:   Melvin Jeter
      Theodius McBurrows
      Leopoldo L. Ramos
      Edward J. Kraus
      Jill Klein



U.S. Department of Justice

DEC 19 1986

Washington, D.C. 20530

## DEPARTMENT OF JUSTICE FINAL DECISION

### in the matter of

### Bernardo M. Perez v. Federal Bureau of Investigation

The complainant, Bernardo M. Perez, filed complaints of discrimination and reprisal against the Federal Bureau of Investigation (FBI) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e. The complainant alleged that treatment which he received while employed at the Bureau's Los Angeles Division was discriminatory on the basis of religion (Roman Catholic) and national origin (Mexican-American) and also in retaliation for having engaged in the Equal Employment Opportunity (EEO) process.

### Procedural History

The complainant contacted an EEO Counselor on October 6, 1983 alleging discrimination on the basis of national origin. An unsuccessful attempt to informally resolve the complaint was followed by the filing of a formal complaint on October 26, 1983. Informal adjustment was attempted at various times during January, February, and March of 1984, but no resolution could be reached. The Bureau notified the complainant of proposed finding of no discrimination of March 26, 1984. The complainant then requested a hearing before an Equal Employment Opportunity Commission Attorney-Examiner on April 17, 1984.

With regard to the complaint of retaliation, the complainant wrote to the Director of the FBI on November 23, 1983 alleging reprisal, and subsequently contacted an EEO Counselor on January 15, 1984. An informal resolution could not be reached and a formal complaint of reprisal was filed on January 20, 1984. Unsuccessful attempts at informal adjustment took place between August 15, 1984 until September 11, 1984. The Bureau subsequently issued a proposed disposition finding no discrimination and the complainant again requested a hearing.

The EEOC Examiner consolidated the two complaints for the hearing, which occurred in November of 1984 and January of 1985. The EEOC Examiner issued a recommended decision finding no discrimination on August 22, 1985. The record was received by the Complaint Adjudication Office for final decision on September 11, 1985.



- 2 -

Facts

The complainant, Bernardo Perez, entered the FBI in 1960 in a clerical capacity. He left to pursue his education at Georgetown University, coming back to the FBI as a Special Agent in 1963.

Immediately before being assigned to Los Angeles as Senior Administrative ASAC in August 1982, the complainant was SAC in San Juan, Puerto Rico for 2 1/2 years. According to Lee Colwell Executive Assistant Director with the FBI, the complainant's performance as head of the San Juan office was not satisfactory from an administrative, as well as investigative, standpoint (HT p. 202). John Otto, Executive Assistant Director in Charge of Law Enforcement Services with the FBI, states that the complainant showed serious administrative shortcomings (HT, p. 404). Yet, the complainant did have significant interpersonal skills, and given the FBI's considerable investment in him, they felt it was important to give him an opportunity to learn and be taught administrative skills in a "training situation." The general feeling was that if the complainant could improve those skills, he would be a "whole complete valuable FBI leader" (HT, p. 405).

The complainant reported to Los Angeles on August 3, 1982. He met first with the Los Angeles SAC, Richard Bretzing. According to the complainant, the discussion they had led him to believe that Bretzing was prejudiced against Hispanics. He based this on a statement Bretzing allegedly made concerning a rumor that the complainant was being looked upon by Hispanic employees of the Los Angeles Division as their special representative, (Ex. 5, Affidavit of Bernardo Perez, p.2). Bretzing denies making such statement (Ex. 6, Affidavit of Richard Bretzing, p.3).

The complainant states that he noticed later that Bretzing a Mormon, treated other Mormons more favorably than other employees (Hearing Transcript, p.103). After researching the Mormon religion, complainant states, he discovered that Mormons believe dark skinned people are "laminates" and that they "have taint on them", are "lower" and "do not go to the same heaven" (H.T. p.102). The complainant concluded that Bretzing was prejudiced against him because he is Mexican-American. Bretzing states that he does not regard himself as having any discriminatory feelings toward anyone, and that he has gone to great extremes to separate and divide his religion from his administration of the Los Angeles office (H.T. p.1628,1630).

In October 1982, SAC Bretzing reported to John Colwell that the complainant was not performing satisfactorily as an administrator in Los Angeles. On December 17, 1982, after a shooting incident, the administrative inquiry was initially assigned to ASAC Joseph R. Mellitt. Mellitt transferred out of the Los Angeles office on January 1, 1983. According to the complainant



- 3 -

Mellitt asked him to sign the report and the complainant did so on or around February 2, 1983, the date of the report.

It turned out that the report failed to comply with current Bureau rules regarding an administrative inquiry. On May 17, 1983, the complainant received a letter of censure from FBI Director William H. Webster based on the report, placing him on probation (Ex. 27). On June 7, 1983, the complainant sent a letter to Webster stating that he felt the censure and probation were not warranted, and requesting that FBI headquarters recon- sider the matter (Ex. 27). On June 9, 1983, upon learning that the basis for the administrative action was inadequate reporting rather than inadequate investigation, Bretzing sent an aortal to Webster indicating that in addition to the complainant being at fault in the matter, both former ASAC Mellitt and he were also culpable (Ex. 6, Aff. of Richard Bretzing, p. 3). On August 23, 1983, the complainant received a response from Webster stating that his appeal was being denied because he was the senior manager responsible for ensuring that a complete and comprehen- sive report was submitted (Ex. 27).

On February 3, 1983, the complainant requested a reassign- ment as an Investigative ASAC, GS-15, in the Los Angeles divisi (Ex. 27). The complainant and Bretzing had discussed the problems the complainant was having, and agreed that the com- plainant should request a demotion to a GS-15 position in the L Angeles office. Bretzing backed up the request with a letter t Lee Colwell sent out on the same day. On April 1, 1983, the request was denied. The letter stated that policy within the F was that individuals at the level of ASAC or above are not permitted to step down to a lesser administrative or investiga- tive position within their current office of assignment (Ex. 28

Shortly after that, the complainant applied for the posit: of legal attache at the FBI's office in Mexico City. According to Bretzing, he told complainant that he would give him the benefit of the doubt and issue him a minimally satisfactory rating, instead of an unsatisfactory rating, on the critical elements on his appraisal if complainant would agree to reques reallocation to a GS-14 position. Bretzing states that this w done in an effort to allow the complainant to preserve his dignity and self-respect (Ex. 6, Aff. of Richard Bretzing, p.

On May 16, 1983, however, the complainant told Bretzing t he would resist a reduction to a GS-14 position. According to Bretzing "this was reversal of our previous agreement and I advised Mr. Perez that if he did this, I would initiate an act to remove him from the position of Administrative ASAC based c incompetence" (ibid., p. 4). Apparently, this request was als denied, and on June 17, 1983, the complainant again requested transfer, this time to any field division in the U.S. He stat that he was willing to be demoted either a GS-15 or GS-14 leve





- 4 -

with salary retention. On July 7, 1983, the complainant again requested reassignment, this time as a Supervisory Special Agent, grade unspecified, to another division in the Western part of the United States.

On July 19, 1983, the complainant was given a "fully successful" rating overall.1/ On September 14, 1983, the complainant rescinded his previous transfer requests of June 17 and July 7, 1983 (Ex. 28). The complainant was questioned by Bretzing regarding this change, and the complainant stated that he felt the FBI/HQ had taken too long to resolve this request and that he was tired of waiting for their action. He also stated that he had done what he felt he had to do, and that this was a "complex matter", too involved to discuss (ibid., p. 7). The complainant alleges that Bretzing threatened to "bust [complainant] to the bricks as a GS-13" during this conversation; Bretzing denies making such a statement (Ex. 6, Aff. of Richard Bretzing, p. 5).

On September 20, 1983, in a lengthy and detailed letter to Webster and John Otto, EAD, Bretzing described the situation in the Los Angeles office, gave a summary of the events leading up to that date, and requested that the complainant be transferred as soon as possible "from the Los Angeles Division to a position in the field or at FBI/HQ, at a level to be determined by the career board, where his skills and abilities may be better used" (Ex. 28, letter from Bretzing to Webster and Otto, dated September 20, 1983). Bretzing cited as reasons for the request the complainant's administrative deficiencies and the loss of effectiveness and credibility complainant had experienced in Los Angeles.

On October 3, 1983, Bretzing's request was denied (Ex. 28). The response directed Bretzing to give the complainant a demonstration period in which to bring his performance up to a satisfactory level. It raised the possibility of reassigning the complainant to other ASAC areas of responsibility, stating that if those areas were inconsistent with his currently assigned critical elements and standards, the entire performance appraisal process on the complainant would need to be reinitiated under new elements and standards (ibid.).

On October 6, 1983, the complainant contacted an EEO Counselor for the first time regarding his allegations of discrimi-

---



1/ The complainant received a "minimally satisfactory" rating in the two critical elements of "associate management" and "supervision, evaluation and development of subordinates" (Ex. 28, letter from Bretzing to William Webster and John Otto, dated September 20, 1983, p. 6; see appraisal in Reprisal File, Ex. 29).

- 5 -

...ion. On October 23, 1983, the complainant and Bretzing met to discuss the FBI's response to Bretzing's request of September 20. On October 26, 1983, the complainant filed a formal complaint of discrimination.

On November 7, 1983, Bretzing sent an airtel to FBI/HQ asking permission to realign the duties of some of the ASACs of the Los Angeles division. Among the changes he requested was the reassignment of the Personal and Property Crimes Program from ASAC P. Bryce Christensen to the complainant, and the reassign-ment of Administrative and Special Operation Group matters from the complainant to ASAC Christensen. On November 14, 1983, authority for the changes was granted (Reprisal File, Ex. 28). In a follow-up memo to FBI/HQ on November 18, 1983, Bretzing confirmed the grant of authority and noted that the complainant would continue to function as the Senior ASAC (GS-16) of the Los Angeles Division, and would serve as the Acting SAC as appro-priate. Bretzing stated that he considered the complainant better qualified for assignment to criminal matters; he also stated that the changes would be effective as of November 28, 1983 (ibid.). On November 22, 1983, Bretzing sent a memo to the complainant informing him that the Performance Appraisal Plan signed by him on July 11, 1983, would remain in effect and continue as his performance plan following the change in organi-zational assignments on November 28, 1983.

On December 28, 1983, Bretzing sent a memo to the complain-ant advising him that his performance had deteriorated to an unsatisfactory level in critical elements 1 and 2 of his per-formance plan Bretzing provided him with a detailed list of his shortcomings occurring from July through December 1983. He informed the complainant that unless his performance improved to at least the minimally satisfactory level within 30 days from the date of the memo, he would be issued an appraisal at the unsatis-factory level and appropriate action against him would be proposed (Reprisal File, Ex. 6).

On January 9, 1984, the complainant refuted each allegation of shortcomings in a letter to William P. Crawford, EEO Officer, FBI (ibid.). On January 20, 1984, the complainant filed a formal complaint of reprisal.


(23)

- 6 -

**EEOC Complaint's Examiners' Recommended Decision**

1. _Diminution of duties_. The EEOC Examiner found that the complainant was a member of a protected class because of his national origin and religion; that many of his duties and responsibilities were removed by the Special Agent-in-Charge; that other employees of Mexican-American national origin felt discriminated against; and that employees of the Mormon religion were perceived as receiving favored treatment (Recommended Decision (RD) at p.12).

The Examiner also found that the reasons offered by the agency for its actions toward the complainant were legitimate an non-discriminatory. The Examiner noted that the documented administrative inefficiency of the complainant, which began in Puerto Rico and continued after the complainant transferred to Los Angeles, justified a diminution of duties. In addition, the Examiner was not persuaded by the complainant's assertion that the Bureau withheld necessary resources from him, resulting in the deficiencies which led to the diminution of duties (RD at 26).

In response to the complainants' allegation that the FOI made no attempt to improve his administrative skills because Bretzing never formulated a specific improvement plan, the Examiner was not persuaded that the absence of a plan was evidence of a pretext of discrimination.

The Examiner also found that the complainants' allegations of Mormon favoritism were based upon misperception and specula-tion and were not supported by the evidence (_ibid_).

2. _Letter of Censure_. The complainant claimed discrimina-tion in relation to a letter of censure he received following t signing of a report submitted to headquarters detailing a shooting incident (RD at 27). The Examiner found that the shooting incident was investigated by Mr. Brekke and the report was prepared by Brekke and Mellitt, 2/ and that Bretzing autho-rized the original submission, yet the complainant was the only person disciplined (_ibid_). From this, the Examiner determined that the evidence was sufficient to establish a _prima facie_ cas of disparate treatment in discipline which shifted the burden t the Bureau to explain its actions (RD at 29).



_____

2/ The national origin and religion of Brekke and Mellitt are not in the record. However, the Examiner proceeded with her analysis on the inference that neither individual was of Mexi-can-American national origin (RD at 29).

- 7 -

The Examiner found the chairman of the Bureau's Shooting Incident Review Group testified that the original submission was incorrect and was remanded to the Los Angeles Division for correction with no disciplinary action contemplated at that time (ibid). The revised report that was submitted to headquarters showed the complainant as the prepare. The Administrative Services Division evaluated the analysis and comments from the Shooting Incident Review Group, and determined that discipline was appropriate (RD at 30). Thus, the Examiner concluded that the Bureau's reasons for disciplining the complainant were legitimate and non-discriminatory.

The complainant also alleged that Bretzing organized the events leading to his censure by preventing a copy of the first report, which was initialed by Bretzing, from being placed in the Los Angeles office file until long after the complainant had been censured and a subsequent appeal denied (RD at 32). The Examiner found that Bretzing accepted culpability along with Mellitt for the initial incorrect report and admitted this fact in a communication sent with the complainants' appeal (RD at 32). Finding that Bretzing would not logically contemplate sending a communication absolving the complainant of culpability if he was discriminating against the complainant, the Examiner determined that the complaint of discrimination concerning censure and probation had no basis (RD at 33).3/

3. <u>Solicitation of Demotion and Transfer</u>. The Examiner found that the sequence of events that occurred in conjunction with complainant's diminution of duties, which led to a solicitation of demotion and transfer, gave rise to an inference and <u>prima facie</u> case of discrimination based on national origin and religion (RD at 36). According to the Examiner, the evidence indicated that Bretzing had justification for taking adverse action against the complainant. What followed was a series of negotiations between the complainant and Bretzing whereby the complainant sought a transfer at a lower grade level in return for the "benefit of the doubt" on the first two critical elements of his performance rating (RD at 39). To determine whether this course of action was based on discriminatory animus or based on inefficient performance, the Examiner looked to the complainant's performance appraisal prior to his arrival in Los Angeles. The Examiner found the past performance ratings consistent with those given by Bretzing and concluded that the evidence supported the



---

3/ In regards to the communication that was kept out of the Los Angeles office files, the Examiner found this to be insignificant because the letter of censure and subsequent appeal were handled at FBI headquarters in Washington, D.C. where access to the Los Angeles files would not affect the discipline received by the complainant.

- 8 -

complainant's history of performance problems in the area of administration (RD at 43). The Examiner determined that discrimination based upon religion and national origin had not been established because the complainant had not proved by a preponderance of the evidence that the explanation for the solicitation of demotion and transfer by the agency was not credible.

4. <u>Reprisal</u>. The complainant alleged that his job duties were realigned in retaliation for his original complaint of discrimination (RD at 45). The Examiner found the evidence indicated that the complainant received adverse treatment within two weeks of the filing of his complaint which gave rise to "... an inference of a causal connection between the protected activity and the adverse treatment" and thereby established a <u>prima facie</u> case of retaliation (<u>ibid</u>).

According to the Examiner, the evidence indicated that Bretzing had considered reassigning the complainant in early 19[...] when creation of a new ASAC position was requested. In addition Mr. Colwell stated that the realignment of the complainant's duties was an attempt to permit the complainant to retain the same grade level without being forced to step down in view of h[...] unsatisfactory work performance (RD at 47). ASAC James Nelson and SAC John Hall of the Los Angeles office suggested that Bretzing had lost confidence in the complainant and that the office would operate more efficiently with the complainant havi[...] responsibility for criminal as opposed to administrative matter[...] (RD at 48). Therefore, the Examiner found that the Bureau had [...] articulated legitimate, non-retaliatory reasons for reassigning [...] the duties of the complainant.

In regards to the complainant's attempts to show pretext [...] the speed with which the reorganization request was handled, t[...] Examiner determined that the evidence did not support the contention because of the varying nature and time frames with [...] which different requests were processed. The Examiner rejecte[...] the complainant's contention that the realignment of duties wa[...] inconsistent with his last annual performance rating of "fully successful," because of the complainant's history and persiste[...] of inefficient performance (RD at 50). Finally, the Examiner reasoned that the complainant's change in duties was a continu[...] tion of the chain of events that occurred prior to the filing [...] the complaint (<u>Ibid</u>). The Examiner concluded that the compla[...] ant was not retaliated against as alleged because he had not shown that the agency's Bureau's were motivated by the filing [...] the initial complaint.

## Analysis

Title VII of the 1964 Civil Rights Act prohibits federal employers from discriminating "against any individual with



- 9 -

respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion, sex, or national origin." See Sec. 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-2(a)(1). Employers are also prevented from taking action against employees because employer have utilized Title VII processes. See 29 C.F.R. 1613.261-1613.262. See also Mitchell v. Baldrige, 719 F.2d 801 (D.C. Cir. 1985).

Earlier Title VII cases emphasized a burden shifting approach to analysis of discrimination. See McDonnell Douglas v. Green, 411 U.S. 792 (1973). The Supreme Court has more recently held that the focus should be on all of the evidence and on the question of whether discrimination actually occurred, regardless of whether a prima facie case was actually proved. U.S. Postal Service v. Aikens, 460 U.S. 711 (1983). The Aikens decision reduced the reliance on presumptions but did not alter the type of evidentiary showing required to prove discrimination. There must be direct evidence of discrimination in the record, or circumstances that give rise to an inference of discrimination, which the employer does not adequately rebut (id).

The complainant alleged discrimination based on national origin and religion because he was not permitted to function as Senior ASAC; received a letter of censure on May 17, 1983 and was placed on probation; and had a voluntary demotion and transfer solicited by the SAC.

The EEOC Examiner made a thorough and complete analysis of the issues and rendered a fair decision. All of the points addressed were substantiated by the analysis in conjunction with the record. For the purpose of clarity, a few portions of the proposed disposition require elaboration and expansion.

1. The first issue to be discussed involves the complainant's perceived and actual job functions, which requires a brief extension of the EEOC Examiner's analysis. In relation to not being permitted to function as Senior SAC, the evidence suggests that the complainant was under a misconception as to what his job duties would be upon arrival in Los Angeles. The complainant appeared to be under the impression that he would have diverse duties in Los Angeles, such as recruitment and Olympic games work, when he actually was sent to Los Angeles for training and strengthening of deficient administrative skills. In view of the insufficient work performance ratings that the complainant received in Puerto Rico for administrative functions as well as the fact that he was being moved from an SAC position to an ASAC position, it would have been reasonable for the complainant to realize that he was being transferred in an effort to improve his administrative performance. In addition, the evidence shows that personnel at FBI headquarters in Washington, D.C. were clear in their objective of transferring the complainant specifically to



- 10 -

improve his administrative skills. In regard to Bretzing's statement that he would not have selected the complainant for the ASAC position, this is also reasonable in view of the fact that Bretzing was new to the office himself and would not desire a weak administrative ASAC.4/  While the complainant may have perceived his assignments in Los Angeles as evidence of discriminatory treatment, the record supports that he simply did not fully understand, or chose not to understand, the nature of his Los Angeles assignment.

2.  The EEOC Examiner's analysis of the letter of censure and probation received by the complainant is accurate and therefore shall not be given further treatment.

3.  Another issue that requires clarification in view of it importance involves the demotion and transfer that Bretzing solicited.  It is improper for a good performance rating to be used to coerce or encourage an employee to seek a transfer. However, Bretzing merely informed the complainant that he would give him the "benefit of the doubt" on his work performance rating, which would fall under the discretion of the work performance rater.  The evidence in the record indicates that Bretzing's actions were in fact an attempt to allow the complain ant to "transfer with some dignity," as opposed to being forced to transfer with a totally unsatisfactory work performance rating.  In addition, the complainant apparently had agreed wit Bretzing that he would request a transfer, but changed his mind despite the fact that Bretzing had held up his portion of the agreement in relation to the work performance rating.  If the complainant felt that he was being discriminated against by thi course of action, he should have raised the issue initially, instead of first bargaining for the transfer, and then reneging on the bargain.

4.  The final issue to be discussed concerns the complainant's claim of reprisal for filing the initial EEO complaint.  There is a question as to whether Bretzing was awar that the complainant was contemplating or taking EEO action whe they met on October 13, 1983.  (RD at 46).  The record shows th Bretzing informed the complainant at this meeting ". . . that h had heard rumors that Mr. Perez believed that the trouble betwe them was an EEO related matter" (ibid).  Technically, this is conclusive in determining whether Bretzing had actual knowledg of EEO involvement.  However, an inference could be created th Bretzing was aware that the complainant was taking EEO action, and retaliated by changing the complainant's duties on Novembe 14, 1983, and then giving the complainant a memo for unsatis-

---

4/  The EEOC Examiner made an adequate analysis of the compla ant's claims of Mormon favoritism.



- 11 -

factory work on December 28, 1983. However, it needs to be reiterated here that the evidence in the record shows that the Bureau's and Bretzing's actions were a continuation of earlier attempts to change the complainant's duties, rather than a change of heart which received only after complainant filed a Title VII charge. Regardless of whether Bretzing knew in October that complainant was going to file a charge, there is no implication that the Bureau responded to this by seeking harsher discipline on complaint. The Bureau action following the meeting merely continued the prior course of seeking to remove complainant from his administrative function.

### Decision

The EEOC Examiner's Recommended Decision (attached) is incorporated in the Department of Justice decision. The evidence in the record does not support the complainant's claims of discrimination based on national origin and religion. Therefore relief must be denied.

Mark L. Gross
Complaint Adjudication Officer

Marvin E. Speed
Law Clerk
Complaint Adjudication Office

Caroline Harty
Law Clerk
Complaint Adjudication Office

PRIVACY ACT STATEMENT: 1. AUTHORITY—The authority to collect this information is    part of the complaint file during the investigation, hearing, if any, adjudication; and ap
rived from 42 U.S.C. Section 2000e-16; 21 CFR Sections 1613.214 and 1613.222.    to the Equal Employment Opportunity Commission.
PURPOSE AND USE—This information will be used to document the name and allegations of    3. EFFECTS OF NON-DISCLOSURE—Submission of this information is VOLUN
a complaint of discrimination based on race, color, religion sex, age, handicap, or national origin.    ure to furnish the information will result in the complaint being returned without ap
The signed statement will serve as the record necessary to initiate an investigation and will become

| 1. Complainant's Full Name | 2. Your Telephone Number (including a |
|---|---|
| BERNARDO M. PEREZ | Home 915-581-5292 |
| Street Address, RD Number, or Post Office Box Number<br>6361 Via Aventura | Work 915-533-7451 |
| City   State   Zip Code<br>El Paso, Texas  79912 | |

| 3. Which Department of Justice Office Do You Believe Discriminated Against You? (Prepare a separate complaint for each office) | 4. Are You Now Working For The Department of Justice?<br>☒ YES (Answer A, B, C, and D below)  ☐ NO (Continue with qu |
|---|---|
| A. Name of Office Where You Believe Discriminated Against You.<br>FBI HEADQUARTERS | A. Name of Agency Where You Work<br>FBI – El Paso Division |
| | B. Street Address of Your Agency<br>202 U.S. Court House |
| B. Street Address of Office<br>10th and Pennsylvania Avenue | C. City   State   Zip Code<br>El Paso, Texas 79912 |
| C. City   State   Zip Code<br>Washington, D.C. 20535 | D. Title and Grade of Your Job   GS-16<br>Assistant Special Agent in Cha |

| 5. Date on Which Most Recent Alleged Discrimination Took Place | 6. Check Below Why You Believe You Were Discriminated Against! |
|---|---|
| Month   Day   Year<br>8      5      85 | ☐ Race (Give Race) _____<br>☐ Color (Give Color) _____<br>☐ Religion (Give Religion) _____<br>☐ Sex (Give Sex)   ☐ Male   ☐ Female<br>☐ Age (Give Age) _____<br>☒ National Origin (Give National Origin) Mexican-American   ☐ Handicap   ☐ Physical<br>☐ Reprisal<br>☐ Other |

7. Explain How You Believe You Were Discriminated Against (Treated differently from other employees or applicants) Because of Your Race, Color, Reli Age, Handicap, Reprisal or National Origin (You may continue your answer on another sheet of paper if you need more space). I was cen on 8/5/85, by letter dated 7/31/85, for releasing certain documents to authorized individuals. This letter of censure was signed by William H Webster, Director, FBI, and is in direct retaliation for my series of E complaints, to include a Class Action Complaint all based basically on institutionalized discrimination of Hispanics in the FBI.

8. What Corrective Action Do You Want Taken on Your Complaint? I want the letter of censure rescinded removed from my personnel file. I expect that my allegation as contain in those documents be properly investigated and addressed on a timely l

| 9. A)  I Have Discussed My Complaint With an Equal Employment Opportunity Counselor<br>DATE OF FIRST CONTACT:   DATE OF LAST INTERVIEW: | B.)  Name of Counselor:<br>Ray Loll |
|---|---|
| 9   13   85      10   17   85 | |

| 10. Date of This Complaint<br>Month   Day   Year<br>10   17   85 | 11. Sign Your (Complainant's) Name Here:<br>Bernardo M. Pérez |
|---|---|

RECEIVED
MAY 02 2022
EEOC/OFO

*The U.S. Equal Employment Opportunity Commission*

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | Perez, Bernardo M. |
| Home/mailing address: | 1820 Pebble Creek Trail N.W. |
| City, State, ZIP Code: | Albuquerque, NM 87120 |
| Daytime Telephone # (with area code): | (505) 310-0051 |
| E-mail address (if any): | perez980@gmail.com |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | José Angel Silva |
| Non-Attorney Representative name: | |
| Address: | 907 E. Baltimore Dr. |
| City, State, ZIP Code: | El Paso, TX 79902 |
| Telephone number (if applicable): | (915) 613-9090 |
| E-mail address (if any): | joenueve@gmail.com |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | Federal Bureau of Investigation |
| Identify the Agency's complaint number: | FBI-2021-00233 |
| Location of the duty station or local facility in which the complaint arose: | El Paso, Texas |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | X Yes; Date Received Feb. 11, 2022 (Remember to attach a copy)<br>___ No<br>X This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | X No<br>___ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | X No<br>___ Yes (**Attach a copy of the civil action filed**) |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

✱ Notice was sent by U.S. Postal Service, Return Receipt Requested
To: Matt Rizzo, Unit Chief
Employment Unit 1,
FBI
935 Pennsylvania Ave. NW, Room 10140
Washington, D.C. 20535

| Signature of complainant or complainant's representative: | |
|---|---|
| Date: | |

**EEOC Form 573 REV 1/01**

## PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001

2. **AUTHORITY**: 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

*This page was last modified on January 9, 2009.*



**U.S. Department of Justice**

Complaint Adjudication Office

Agency Complaint No. FBI-2021-00233
EEOC No. 570-2022-00077X

---

*950 Pennsylvania Ave, NW*
*Room 3651*
*Washington, DC 20530*

March 30, 2022

Bernardo M. Perez
perezb980@gmail.com

Dear Mr. Perez:

This letter concerns the above-captioned EEO complaint that you filed against the Federal Bureau of Investigation (FBI). On February 8, 2022, EEOC Administrative Judge (AJ) Meghan A. Droste issued a "Decision and Order Dismissing Class Complaint" in favor of the FBI in this case. The Department of Justice is not aware of any basis for rejecting AJ Droste's judgment in favor of the FBI, and has accepted the AJ's Decision and Order.

Under EEOC regulations, federal agencies have 40 days from the date of receipt of the AJ's decision to issue a Final Action. If the agency does not issue a Final Action within the 40-day period, the AJ's decision becomes the Agency's Final Action at the end of the period. In this case, more than 40 days have passed since AJ Droste issued her Decision, and AJ Droste's Decision has now become the Department of Justice's Final Action. If you disagree with the AJ's Decision and wish to appeal it, please follow the instructions below.

### Rights of Appeal

First, you have the right to appeal any part of the AJ's decision to the Equal Employment Opportunity Commission (EEOC). You may do so by filing your appeal within thirty days of the date you receive this letter. During this coronavirus health crisis, the EEOC's Office of Federal Operations (OFO) strongly encourages complainants to file their appeals online at the EEOC's Public Portal located at publicportal.eooc.gov/portal.

Once at this website, please click on the "Filing with the EEOC" link. If you do not already have Public Portal credentials, you will be asked to register by entering your

2

contact information and confirming your email address. Once you are registered you can request an appeal, upload relevant documents (e.g., a statement or brief in support of your appeal), and manage your personal and representative information. In completing the appeal form through the Public Portal, when answering the question "which agency is named in your complaint," please make sure that you select the magnifying glass icon next to the answer box. From the drop-down menu that appears listing all DOJ components, you must select the appropriate DOJ component before answering the remaining questions. During the adjudication of your appeal, you can also use the EEOC Public Portal to view and download the appellate record. When electronically filing your appeal with the EEOC through the EEOC Public Portal, you must state the date and method by which you sent the copy of the appeal to Mr. Matt Rizzo (see below).

If you do not have access to a computer for electronic filing, you may file your appeal by mail by sending the attached EEOC Form 573, Notice of Appeal/Petition, to Carlton M. Hadden, Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013-8960. You must also send a copy of your notice of appeal that you file with the OFO to Matt Rizzo, Unit Chief, Employment Unit 1, Federal Bureau of Investigation, 935 Pennsylvania Ave. NW, Room 10140, Washington, DC 20535. When electronically filing your appeal with the EEOC through the EEOC Public Portal, you must state, either on, or attached to, the notice of appeal, the date and method by which you sent the copy of the appeal to Mr. Rizzo.

Second, you have the right to file a civil action in the appropriate United States District Court within 90 days of the date you received the AJ's decision. In filing your federal complaint, you should name Attorney General Merrick Garland as the defendant. Even if you appeal this decision to the EEOC, you still have the right to go to federal court. You may file a civil action in the United States District Court within 90 days of the day you receive the Commission's final decision on your appeal, or after 180 days from the date you filed your appeal with the Commission, if the Commission has not made a final decision by that time.

3

If you cannot afford to file a civil action, you can ask the court to allow you to file the action at no cost to you. The court may also provide you with an attorney if you cannot afford to hire one to represent you in your civil action. Questions concerning when and how to file a waiver of costs should be directed to your attorney or the District Court clerk.

Sincerely,

C. Douglas Kern
Complaint Adjudication Officer

cc:    Matt Rizzo
       Richard Toscano

       Celeste Wasielewski
       Celeste.Wasielewski@ic.fbi.gov

       Edward Broussard
       embroussard@fbi.gov

       Kelly Smith
       kelly.smith3@ic.fbi.gov

       Roselee Dodson
       rdodson@fbi.gov

       Jose Angel Silva
       joenueve@gmail.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Direct Dial: (202) 921-2970
FAX: (202) 827-2349
Website: www.eeoc.gov

| | |
|---|---|
| Bernardo Perez,<br>    Complainant, | ) EEOC No. 570-2022-00077X<br>) Agency No. FBI-2021-00233<br>)<br>) |
| v. | )<br>) |
| Merrick B. Garland, Attorney General,<br>U.S. Department of Justice,<br>    Agency. | ) Administrative Judge Meghan A. Droste<br>)<br>)<br>) |
| | ) February 8, 2022 |

## DECISION AND ORDER DISMISSING CLASS COMPLAINT

This Decision is issued pursuant to 29 C.F.R. § 1614.204(d)(2) and § 1614.107(a)(2) (2022). For the reasons stated herein, I find Complainant's class complaint is untimely and therefore is **DISMISSED**.

### Relevant Facts and Procedural History

Complainant retired from employment with the Agency in 1995. *See* Report of Counseling at 3. On September 8, 2021, Complainant sought EEO counseling for a class complaint. *See id.* at 2. Complainant alleges that during his employment the Agency subjected him to harassment and discrimination based on his national origin and religion, and repeatedly retaliated against him as a result of his participation as the named class representative in a lawsuit filed in federal court. *See id.* at 3-4. Complainant further alleges that the Agency failed to promote him to the SES-5 paygrade as ordered by a federal judge in 1988 and as a result, his subsequent retirement payments have been lower than he believes is proper.

On November 2, 2021, the Agency forwarded Complainant's class complaint to the Commission for a decision on class certification. On January 20, 2022, Supervisory Administrative Judge Maricia Woodham issued a request for information to the parties, seeking information necessary to determine whether the complaint meets the requirements of numerosity, commonality, typicality, and adequacy of representation. The parties were ordered to submit the requested information no later than February 4, 2022. The parties both timely filed their responses.

In his response, Complainant alleges that the Agency reduced his salary from the SES-4 to the SES-3 level during his employment due to a 1989 federal court decision in a class action complaint in which he was the named class representative. *See* Answers to Judge Maricia D. Woodham's Letter Dated 01/20/2022 ("Complainant's Response") at 1-2. Complainant formed his belief regarding retaliation at the time of the salary reduction, but felt he could not file a

1

complaint with the Agency's EEO office due to his fears of further retaliation. *See id.* at 2-3. Complainant alleges that all retirement payments he received from 1995 to the present have been improper as a result of the retaliation during his employment. *See id.* at 3; *id.* at 5.

## Analysis

Pursuant to 29 C.F.R. § 1614.204, an administrative judge may dismiss a class complaint for any of the reasons listed in 29 C.F.R. § 1614.107, including untimely EEO counselor contact. Although he first contacted a counselor more than 25 years after retiring from the Agency, Complainant argues his complaint is timely because every improperly low retirement payment represents a new act of discrimination or retaliation. *See Complaint of Discrimination* at 1. Complainant's argument is not supported by law. As the Commission has held, the Lilly Ledbetter Fair Pay Act "preserves the former case law with respect to payments of pension benefits where the amount of the benefit is determined by a formula that was applied . . . when the employee retired." *See Brakeall v. Env't Prot. Agency*, EEOC App. No. 0120093805 (Nov. 30, 2010). Therefore, unlike paychecks, the receipt of a retirement payment does not restart the 45-day clock for making initial EEO contact. *See id.* ("[P]ension benefits are considered paid upon entering retirement and not upon the issuance of each annuity check"); *see also Lashawn C. v. Dep't of Veterans Affairs*, EEOC App. No. 0120170724 (Mar. 21, 2019) ("Although Complainant received retirement benefits after May 2013, Complainant's retirement benefit is considered paid in May 2013 when she retired, not when she received each retirement check. Accordingly, Complainant's February 27, 2014, counselor contact was untimely.") (internal citations omitted); *Lauralee C. v. Dep't of the Army*, EEOC App. No. 0120152265 (Oct. 23, 2015) ("[W]e do not find that the Lilly Ledbetter Fair Pay Act is applicable . . . to retirement payments.").

Complainant's claims regarding the reduction of pay during his employment are also untimely. Complainant believed at the time that the reduction was retaliatory but did not contact an EEO counselor. *See Complainant's Response* at 1-2. Complainant's concerns about further retaliation are not grounds to toll the 45-day deadline for more than two decades. *See Levi P. v. Dep't of Homeland Sec.*, EEOC App. No. 2020002002 (Aug. 27, 2020) ("[T]he Commission has held that fear of reprisal alone is an insufficient justification for extending the time limitation for contacting an EEO Counselor."). For these reasons, Complainant's class complaint is hereby **DISMISSED** as untimely.

It is so **ORDERED**.

*[signature]*

For the Commission:

MEGHAN A. DROSTE
Administrative Judge
Telephone: (202) 921-3197
Meghan.Droste@eeoc.gov

2

*Via service by email and through the Public Portal and FedSep to:*
Bernardo Perez, Complainant: perezb980@gmail.com

Celeste Wasielewski, Agency Representative: Celeste.Wasielewski@ic.fbi.gov
Edward Broussard, Agency Representative: embroussard@fbi.gov
Kelly Smith, Agency Representative: kelly.smith3@ic.fbi.gov
Matthew Rizzo, Agency Representative: marizzo@fbi.gov
Roselee Dodson, Agency Representative: rdodson@fbi.gov

*Via service by email to:*
Jose Angel Silva, Complainant Representative: joenueve@gmail.com

3

## NOTICE TO THE PARTIES

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. § 1614.109(b), 109(g) or 109(i). **With the exception detailed below, Complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying Complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision. In April 2020, a memorandum was issued by Carlton Hadden to the Federal Sector EEO Directors and officials containing information and directives regarding the tolling of timeframes during the pandemic. In July 2020, this memorandum was modified to direct Agencies to return to issuing final actions. See https://eeoc.gov/update-april-6-2020-memorandum-processing-information. Complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order. Complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of Complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. § 1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has **not** issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, Complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. Complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

You may file an appeal with the Commission's Office of Federal Operations **when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision.** 29 C.F.R. § 1614.110(a). You will have **thirty (30) days** to file an appeal from the time you receive the agency's final order. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

**Do not send your appeal to the Administrative Judge.** Your appeal must be filed with the Office of Federal Operations at the address set forth below. If you do **not** use the EEOC Public Portal to file your appeal, you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations, and you must certify the date and method by which you sent a copy of your appeal to the agency.

4

## HOW TO FILE AN APPEAL

**RECOMMENDED METHOD** – The EEOC highly recommends that you file your appeal online using the EEOC Public Portal at https://publicportal.eeoc.gov/, and clicking on the "Filing with the EEOC" link. If you have not already registered in the Public Portal, you will be asked to register by entering your contact information and confirming your email address. Once you are registered you can request an appeal, upload relevant documents (e.g., a statement or brief in support of your appeal), and manage your personal and representative information. During the adjudication of your appeal, you can also use the Public Portal to view and download the appellate record. **If you use the Public Portal to file your appeal you do not have to send a copy to the agency.**

BY MAIL – You may mail your written appeal to:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013-8960

BY HAND DELIVERY OR COURIER – You can also hand-deliver or send your appeal by courier service to:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
131 M St., NE
Washington, D.C. 20507

BY FAX – Finally, you may send it by facsimile to (202) 663-7022.
If you elect to mail, deliver, or fax your appeal you should use EEOC Form 573, Notice of Appeal/Petition, and should indicate what you are appealing. Additionally, you must serve the agency with a copy of your appeal, and include a statement certifying the date and method by which service to the agency was made.

## COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. See 29 C.F.R. § 1614.504. If Complainant believes that the Agency has failed to comply with the terms of its final action, Complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If Complainant is not satisfied with the Agency's attempt to resolve the matter, he or she may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. Complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after Complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

5

# ANSWERS TO JUDGE MARICIA D. WOODHAM'S LETTER
## DATED 01/20/2022

EEOC Case # 570-2022-00077X

Agency Case # FBI-2021-00233

QUESTION #1:

Specifically and clearly identify each of the employment actions that are the subject of your complaint. With regard to each of the employment actions that are the subject of your complaint (e.g., performance evaluations, fellowships and training, freedom of information and privacy act, awards, promotions/hiring, time-in-grade prior to promotions [either career or competitive], opportunities to act in supervisory positions, reassignments, grievance/EEO program, and reprisal), specify the questions of law or fact that are common to your individual claims and the claims of the class that you seek to represent, *i.e.*, how is your claim typical of the claims of employees/former employees in other divisions of the Agency and in other classifications and grade levels? Regarding each of the personnel actions challenged, explain the specific practice you are challenging and specify whether there is a centralized administration and/or decision- making system within and among the Agency's divisions that governs these employment actions.

RESPONSE TO QUESTION #1:

My complaint is that the FBI illegally demoted me from my SES 4 level to SES 3 level based upon the fact that I am a Hispanic FBI Agent who sued the FBI. My salary was cut.   This demotion is also an act of deliberate retaliation for my successful class action lawsuit I brought against the FBI and the Department of Justice in 1988-1989 in El Paso, Texas in the Civil Rights lawsuit, *Bernardo M. Perez v. FBI*, 707 F. Supp. 891 and 714 F. Supp. 1414 (W.D. Tex. 1989). May 5, 1989.

In the Court's findings, Federal Judge Lucius D. Bunton found that I was the subject of personal reprisal by the FBI for bringing the lawsuit and he ordered that I be promoted to SES 4 within 45 days. The FBI refused to comply with the Judge's Order. I complained to Director William Sessions, who ordered my promotion over the objections of several FBI high ranking officials. Class members and I were again victims of reprisal and retaliation, which became so severe and widespread throughout FBI Headquarters and the Field Divisions that the Director dispatched a special team to visit several Field Divisions. The findings were undeniable. Special Agent in Charge of the Albuquerque Division, James Nelson was censured for insubordination and transferred.

At that time, I made a complaint to Director Sessions of 88 Allegations of Perjury and other serious wrongdoings by FBI officials during and after the trial. Director Sessions personally admitted to me that he had not read Judge Bunton's Trial Findings and Rulings. He ordered two Headquarters Officials Dennis Curry and John Schiman to look into my 88 Allegations, which resulted in a year-long investigation. They found numerous, grave violations by FBI officials which the investigators referred to the FBI Office of Professional Responsibility (OPR) and to the Inspector General of the Department of Justice. To this day no one has ever contacted me regarding these matters.

I warned Director William Sessions that because he failed to fire me and allowed our class action case to go to Federal Court, a cadre within the Bureau would set him up to be fired. And, in fact, they did. He was shocked! The conspirators continued their work to undermine him and eventually petty charges of administrative misuse of his FBI vehicle and aircraft travel were filed against him by the Attorney General. Director Sessions refused to resign, and President Clinton fired him on July 19,

1

1993. Sessions claimed he was a "... a victim of internal politics." He did nothing his predecessors had not done except allow our case to proceed.

FBI Director William Webster, who preceded Director Sessions, was found guilty by Judge Lucius D. Bunton of Systemic Discrimination against Hispanic FBI Agents in *Perez v. FBI*, yet he was appointed to a ten-year term as Director of the CIA. William Sessions, a broken man, separated from his long-time wife, died in 2020.

Several top FBI Administrators including Oliver 'Buck' Revell and James W. Greenleaf transferred out of Headquarters and they were not demoted  to lesser SES levels and lower pay. Buck Revell transferred to the Dallas Field Office and James Greenleaf transferred to the London Attaché Office. Other SES level officials, including John Guido, were also transferred to Field and Attachés Offices with their pay grades intact.

Director Sessions was being buffeted and trying to defend his position at the time of my transfer to the Albuquerque Division (AQ). The Director told me I was being transferred to AQ and did not mention any cut in pay. Inexplicably, between the time of my discussion in the Director's office and the time that I returned to my desk, a matter of minutes, **Buck Revell called me and advised that the AQ Office did not merit an SES 4 position. I reminded him that the SES rank goes with the person and not the geographic location, and that was one of the reasons for the creation of the SES System. Buck Revell did not reply.**

Since then, I have spoken with other EEO Officials who have confirmed my beliefs. Buck Revell  did not argue with me, but approximately one month after my arrival in the Albuquerque Office, I was demoted back to SES 3 without even advising me. I was unilaterally demoted by Buck Revell . It was impossible for me to complain to the Director or EEO, as Buck Revell  explained to me that Director Sessions was on his way out and that he, Buck, was staying and therefore in charge. I feared further demotion or firing from the FBI as Buck Revell  had demonstrated in my trial that he was the primary discriminating officials in the FBI.

In the *Perez v. FBI* trial, the class members proved that administrative procedures, including EEO matters, are subjective and that Hispanic FBI Agents were victims of Systemic Discrimination. The number of FBI Hispanic Agents and promotions are proportionally lower and therefore worse today than they were thirty-four years ago. Much of this old system still remains unchanged and unchallenged.

I have since confirmed the accuracy of my understanding of SES Regulations by speaking with former FBI Personnel Officer Faustino Pino, a Hispanic, whom Sessions personally requested to transfer from the Office of OPM to the FBIHQ to initiate Judge Bunton's Rulings. Sessions promised him an SES promotion, which Revell and others objected to because Pino was an outsider and not an FBI Agent. Judge Bunton found that the FBI's promotion system was based upon personal non-objective criteria and that the 'good-'ole-boy' system was the rule of the day, in spite of regulations set forth in the FBI Rules of Regulations Manual. After Faustino retired from the FBI, he complained to me that his own SES level had been threatened by Buck Revell and others because he was trying to incorporate Judge Bunton's Rulings. Faustino was never welcomed into the FBI, and the cadre blocked him from trying to change the FBI for the better.

In regard to the typicality of my complaint of disparate treatment and retaliation against other class members: this question begs the question. I recently called FBIHQ to confirm the current numbers and promotions of Hispanic FBI Agents. Current available FBI statistics refuses to provide actual numbers of Latino FBI Agents, and only gives percentages. I contend in my current EEO Complaint

2

that after our successful Class Action trial ending on September 30, 1989, the FBI as an organization deliberately refused to comply the Federal Court's Rulings and Findings. Unfortunately, Judge Lucius D. Bunton died in 1991 and no one has confirmed that his Rulings and Findings were incorporated as the Law demands. Today's FBI employment and promotion numbers regarding Hispanic FBI Agents shows the FBI has failed to hire or promote Latino FBI Agents. The numbers are paltry.

The question arises why did I not file EEO Complaints at the time that I was illegally demoted from SES 4 to SES 3? **To whom would I complain?**

First, Judge Bunton found that the EEO within the FBI is "*bankrupt*". He did not find retaliation against other class members, but specifically pointed me out as a victim of deliberate retaliation for exercising my rights under EEO Law.

Secondly, while I was present in Judge Bunton's Courtroom during the liability portion of the trial, the FBI illegally introduced into evidence a letter (submitted that very same week) from the FBI to the Attorney General requesting that he fire me. FBI Deputy Associate Director John Glover objected to the optics of the FBI request during the ongoing trial. I do not know and my attorneys never determined the reason for the FBI's blatant act of vengeful retaliation against me. The Attorney General did not fire me for bringing this case into Federal Court. This letter was another unfettered, obvious act of retaliation against me this time before a Federal Judge in his Courtroom. I did not file a Complaint with the 'bankrupt' FBI EEO Office for obvious ominous reasons.

I retired in December, 1995. In October 29, 2008, I was invited by the EEOC Commissioner to deliver a speech at Commission Headquarters before top officials. The topic of the speech was to be "*The Realities and Barriers Faced by Hispanics in the Federal Sector*". In the speech, I explained how I was retaliated against before, during and after for bringing the lawsuit and how the FBI did not follow the Judge's Orders and make necessary changes.

As of today, January 31, 2022, there are 13,455 FBI Agents and only 6.8% are Hispanics. Therefore, there are fewer than 1,000 Hispanic Agents. The current Latino population in the USA is 18.5%. The percentages are openly unbalanced, unequal and indicates obvious discrimination.

In regard to the third part f Question #1, reportedly, the Administrative Division and the Director of the FBI make all decisions regarding administrative matters.

QUESTION #2:

How many individuals do you contend have been adversely affected by each of the employment policies or practices that you allege to be discriminatory? How did you make this determination? Present any available statistical evidence related to this determination.

RESPONSE TO QUESTION #2:

I do not know the number of individuals by each of the employment practices that I alleged to be discriminatory. Thirty-four years have passed since the trial. I know that at the time of the trial, the number of class members who were promoted were paltry. Conversely, many Latino Agents, who testified that the FBI did not discriminate, were promoted, indicating that all Hispanic Agents were faring better.

3

Interestingly, white female Agents were promoted showing that, in general, and lumped together, minority Agents were being promoted. Females were barred from being FBI Agents until the death of J. Edgard Hoover in 1972. Female Agents now outnumber Latino FBI Agents, who became Agents as far back as 1913. When I joined the FBI as an Agent in 1963, there were approximately seven Latinos out of approximately 8,000 FBI Agents. During the trial, the Plaintiffs statistical presentation showed that the number of Latino and Black Agents were strictly controlled and were within a few numbers of each other at any time. Paradoxically, Bureau records show that all Black FBI Agent credential numbers began with the number 4. Was somebody keeping track?

QUESTION #3:

Who are the specific individuals you contend have been adversely affected by each of the employment policies or practices that you allege to be discriminatory and what are their job classifications? How have each of these individuals been affected? Where are these individuals, including geographically and by organizational and departmental unit?

RESPONSE TO QUESTION #3:

I retired from the FBI in1995. At that time there were fifty-seven Field Divisions and at least eleven Headquarters Divisions. I do not know current breakdowns. I know that all Hispanic Agents were adversely affected by each of the FBI employment and practices that were found to be discriminatory at that time. I cannot accurately answer the remaining part of this question regarding how these individuals have been affected and where they were employed including geographically and organization unit then and now. A cursory, but essential reading of *Perez v. FBI* will answer all of Judge Woodham's questions.

QUESTION #4:

Provide an exhaustive list of all the divisions within the Agency in which individuals included within your class complaint are or were employed, and specifically the number of putative class members in each division. Explain whether these divisions share a centralized administration and/or supervision system. Provide an organizational chart that shows the respective position of each of these divisions within the Agency and specify the number of employees of the same protected class(es) as you within each organization and within each of the subunits in this organization.

RESPONSE TO QUESTION #4:

Again, please read *Perez v. FBI* lawsuit and all of Judge Woodham's questions will be answered. I am no longer an employee of the FBI and therefore cannot answer most of these questions.

QUESTION #5:

With regard to your employing organization, provide an organizational chart and specify the number of employees of the same protected class(es) as you within this organization and within each of the subunits in this organization.

RESPONSE TO QUESTION #5:

4

I cannot answer this question. The FBI should be contacted for this information.

QUESTION #6:

What is the nature of the Agency's management organization as it relates to the degree of centralization and uniformity of the personnel practices at issue in the complaint?

RESPONSE TO QUESTION #6:

With regard to the employing and providing an organizational chart, etc. FBI Headquarters must be contacted for this information. As a non-employee, I cannot obtain this information.

QUESTION #7:

If your complaint includes allegations involving performance evaluations, does your class complaint encompass only those employees of the same protected class(es) as you who are evaluated pursuant to a general Agency appraisal system, or does it also include employees evaluated pursuant to other performance evaluation systems? If it includes other evaluation systems, identify these systems and provide any statistical information or other information that supports your claim of discrimination arising from these systems. Additionally, explain how you, an employee evaluated pursuant to one system, can represent employees evaluated pursuant to another system. Provide any information that shows that the relevant appraisal system mandates a uniform employment practice, rather than merely setting out procedures or steps through which employees are evaluated.

RESPONSE TO QUESTION #7:

Again, please read *Perez v. FBI* and thereafter, please contact FBI Headquarters for information regarding their putative administrative, performance evaluation, statistical evaluation, etc. Again, at the time of Judge Bunton's Findings in 1988-1989, the FBI had no objective administrative systems or policies and the EEO in the FBI was 'bankrupt'. I have not been advised by FBI Headquarters of any corrections made after my lawsuit and the Judge Bunton's Findings and Rulings. I have been told by former and current FBI Agents that FBI Headquarters continues in its insensitive, obtuse, recalcitrant administrative system of management. FBI Directors including Director Kelly and Director Comey were unsuccessful in changing the FBI which answers to no one, even Federal Judges.

QUESTION #8:

What is the time span covered by your allegations?

RESPONSE TO QUESTION #8:

I believe the time span is from Judge Bunton's Rulings and Findings in 1988-1989 in *Perez v. FBI*. I also believe that the Lilly Leadbetter Act is implicated in my present Complaint due to the extensive time period involved.

QUESTION #9:

5

Typically, a class must be represented by an attorney experienced in class action litigation in the relevant field. Provide a statement from your attorney outlining his/her experience in Title VII litigation, with specific reference to class action litigation. Specify how you intend to finance the cost of the class action proceeding, including paying for attorneys' fees and other costs necessarily incurred in acting as the agent in a class action proceeding. If you are not represented by an attorney, what efforts have you made to retain an attorney to represent you and the putative class in this matter? Do you intend to retain an attorney in the future?

RESPONSE TO QUESTION #9:

Attorney Jose A. Silva, from El Paso is my attorney and has been my attorney since Perez v. FBI commenced before 1988. He has contacted other experienced class action lawsuit attorneys who are very interested in trying my new EEO case. Attorney Silva will answer your questions regarding required experience, etc.

QUESTION #10:

Provide any information relevant to a determination of whether your Complaint meets the prerequisites of a class action complaint under 29 C.F.R. X1614.204(a)(2).

RESPONSE TO QUESTION #10:

I believe the determination of my qualifications to meet the prerequisites of a Class Action Complaint were determined by Federal Judge D. Bunton in the successful civil rights case *Perez v. FBI*, above cited.

6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Direct Dial: (202) 921-2970
Website: www.eeoc.gov

January 20, 2022

Bernardo Perez, Putative Class Agent
Via Email to: perezb980@gmail.com

Edward Broussard, Agency Representative
Via Email to: embroussard@fbi.gov

Matthew Rizzo, Agency Representative
Via Email to: marizzo@fbi.gov

> RE:    EEO Class Complaint of *Bernardo Perez , et al. v. Dep't of Justice (FBI)*
> EEOC Case Number: 570-2022-00077X
> Agency Case Number: FBI-2021-00233

Dear Parties:

The above-referenced class complaint of discrimination is currently before the Equal Employment Opportunity Commission (EEOC) pending a decision to recommend to the Agency that it either accept or dismiss the class complaint.

Under 29 C.F.R. §1614 (2021), a class complaint may be dismissed for any of the reasons listed in 29 C.F.R. §1614.107 or because it does not meet the prerequisites of a class complaint under 29 C.F.R. §1614.204(a)(2).

At this time, the EEOC lacks sufficient information to determine whether the Agency should accept or dismiss the class complaint. The following information is therefore requested, pursuant to 29 C.F.R. § 1614.204(d).

**The class agent is directed to provide the following information:**

1.    Specifically and clearly identify each of the employment actions that are the subject of your complaint. With regard to each of the employment actions that are the subject of your complaint (e.g., performance evaluations, fellowships and training, freedom of information and privacy act, awards, promotions/hiring, time-in-grade prior to promotions [either career or competitive], opportunities to act in supervisory positions, reassignments, grievance/EEO program, and reprisal), specify the questions of law or fact that are common to your individual claims and the claims of the class that you seek to represent, *i.e.,* how is your claim typical of the claims of employees/former employees in other divisions of the Agency and in other classifications and grade levels? Regarding each of the personnel actions challenged, explain the specific practice

1

you are challenging and specify whether there is a centralized administration and/or decision-making system within and among the Agency's divisions that governs these employment actions.

2.    How many individuals do you contend have been adversely affected by each of the employment policies or practices that you allege to be discriminatory? How did you make this determination? Present any available statistical evidence related to this determination.

3.    Who are the specific individuals you contend have been adversely affected by each of the employment policies or practices that you allege to be discriminatory and what are their job classifications? How have each of these individuals been affected? Where are these individuals employed, including geographically and by organizational and departmental unit?

4.    Provide an exhaustive list of all of the divisions within the Agency in which individuals included within your class complaint are or were employed, and specify the number of putative class members in each division. Explain whether these divisions share a centralized administration and/or supervision system. Provide an organizational chart that shows the respective position of each of these divisions within the Agency and specify the number of employees of the same protected class(es) as you within each division.

5.    With regard to your employing organization, provide an organizational chart and specify the number of employees of the same protected class(es) as you within this organization and within each of the subunits in this organization.

6.    What is the nature of the Agency's management organization as it relates to the degree of centralization and uniformity of the personnel practices at issue in the complaint?

7.    If your complaint includes allegations involving performance evaluations, does your class complaint encompass only those employees of the same protected class(es) as you who are evaluated pursuant to a general Agency appraisal system, or does it also include employees evaluated pursuant to other performance evaluation systems? If it includes other evaluation systems, identify these systems and provide any statistical information or other information that supports your claim of discrimination arising from these systems. Additionally, explain how you, an employee evaluated pursuant to one system, can represent employees evaluated pursuant to another system. Provide any information that shows that the relevant appraisal system mandates a uniform employment practice, rather than merely setting out procedures or steps through which employees are evaluated.

8.    What is the time span covered by your allegations?

9.    Typically, a class must be represented by an attorney experienced in class action litigation in the relevant field. Provide a statement from your attorney outlining his/her experience in Title VII litigation, with specific reference to class action litigation. Specify how you intend to finance the cost of the class action proceeding, including paying for attorneys fees and other costs necessarily incurred in acting as the agent in a class action proceeding. If you are not represented by an attorney, what efforts have you made to retain an attorney to represent you and the putative class in this matter? Do you intend to retain an attorney in the future?

2

10.    Provide any other information relevant to a determination of whether your complaint meets the prerequisites of a class complaint under 29 C.F.R. §1614.204(a)(2).

**The Agency representative shall provide the following information:**

1.    A statement of the Agency's position on whether the complaint meets the requirements of numerosity, commonality, typicality, and adequacy of representation, as required by 29 C.F.R. §1614.204(a)(2) and whether the complaint should be dismissed for any other reason under 29 C.F.R. §1614.

2.    Any other information and/or comments that you may have with respect to any other items addressed to the class agent above.

The parties' responses shall be uploaded to the Public Portal (for Complainants) and FedSep (for Agencies) with copy to the opposing party and Administrative Judge Meghan Droste (meghan.droste@eeoc.gov) by no later than **February 4, 2022.** If you do not respond in a timely fashion, the EEOC will issue appropriate sanctions, including the possibility of drawing and adverse inference or recommending that the Agency dismiss the complaint pursuant to 29 C.F.R. §1614.204(d).

**SO ORDERED.**

For the Commission:

*Maricia Woodham*

Maricia D. Woodham
Supervisory Administrative Judge
maricia.woodham@eeoc.gov

3



U.S. Department of Justice

Federal Bureau of Investigation

---

Washington, D.C. 20535-0001

VIA FEDSEP
11/2/2021

District Director
Washington Field Office
U.S. Equal Employment Opportunity Commission
131 M Street, NE
Fourth Floor, Suite 4NW02F
Washington, DC 20507-0100

        RE:   BERNARDO M. PEREZ AND
              MERRICK B. GARLAND, ATTORNEY GENERAL
              U.S. DEPARTMENT OF JUSTICE
              COMPLAINT OF DISCRIMINATION
              BASED ON RACE (TWO-THIRDS NATIVE AMERICAN); COLOR
              (NATIVE AMERICAN); RELIGION (ROMAN CATHOLIC); SEX
              (MALE); AGE (DOB: SEPTEMBER 26, 1939); NATIONAL
              ORIGIN (MEXICAN AMERICAN); GENETIC INFORMATION;
              AND REPRISAL
              FILE NUMBER:  FBI-2021-00233
              FILED: SEPTEMBER 30, 2021 (RECEIEVED IN EEO)

Dear District Director:

On September 30, 2021, Mr. Bernardo M. Perez filed a class complaint of discrimination. Pursuant to 29 C.F.R. § 1614.204(d), the FBI is forwarding the complaint, EEO Counselor's report and other pertinent information for a determination as to whether the complaint meets the requirements for class certification. Until the EEOC makes a determination regarding class certification in this matter, the FBI will take no action with respect to Mr. Perez's individual complaint.

Please be advised the FBI has designated the following as its representative:

        Employment Law Unit
        Office of the General Counsel
        Federal Bureau of Investigation
        935 Pennsylvania Avenue, N.W.
        Room 10140

District Director

Washington, D.C. 20535-0001
(202) 324-5490
Fax: (202) 323-2168

My office submitted the complaint correspondence file to the Equal Employment Opportunity Commission's (EEOC) Washington Field Office via the EEOC's FedSEP website on October 25, 2021. The complainant's representative, Mr. José Angel Silva, and the complainant have been provided with an electronic copy of the complaint correspondence file. Upon completion of the review, the recommended decision should be forwarded to:

Mr. C. Douglas Kern
Complaint Adjudication Officer
U.S. Department of Justice
Civil Rights Division - CAO
Patrick Henry Building, Room A4810
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Alternatively, you may contact Emilee Fiscus in writing at:

Office of Equal Employment Opportunity Affairs
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Room 9304
Washington, D.C. 20535-0001

2

District Director

If you have any questions regarding this matter, please contact Equal Employment Specialist Emilee Fiscus at (202) 324-8373.

Sincerely yours,

*A. Tonya Odom*

A. Tonya Odom
Assistant Director-
Equal Employment Opportunity
Officer

Attachment(s)

Cc: Mr. José Angel Silva (VIA EMAIL)

Cc: Mr. Bernardo M. Perez (VIA EMAIL)

Cc: Employment Law Unit (VIA EMAIL)
    Room 10140

3

-jes Attorney
909 E. Baltimore Dr.
El Paso, TX 79902

EEOC Headquarters
OCPO-OSD

RECEIVED
MAY 02 2022
EEOC/OFO

Carlton M. Hadden
Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013-8760

7021 2720 0002 5366 1752







U.S. POSTAGE PAID
$8.76
